IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GERRY LEE JAKUBOWSKI,

                      Plaintiff,                      OPINION AND ORDER

v.

                                                     11-cv-373-wmc

MICHAEL J. ASTRUE,
Commissioner Social Security Administration,

                      Defendant.

In this *pro se* action brought pursuant to 42 U.S.C. § 405(g), Gerry Lee Jakubowski seeks judicial review of an adverse decision of the Commissioner of Social Security finding him ineligible for Disability Insurance Benefits and Supplemental Security Income. Specifically, Jakubowski contends that the administrative law judge erred in finding that he could perform a significant number of jobs available in the national economy. This court will affirm the commissioner's decision because the administrative law judge did not err in (1) determining Jakubowski's severe impairments, (2) assessing Jakubowski with a residual functional capacity to perform limited light work, or (3) finding that there are a significant number of jobs in the national economy that he can perform,.

FACTS

The following facts are drawn from the administrative record (AR):

A. <u>Background</u>

Gerry Lee Jakubowski was born on May 6, 1957. He has a high school education and past relevant work as a general laborer. AR 17. On June 19, 2007, Jakubowski filed an

application for disability insurance benefits and supplemental security income, alleging disability as of June 2003 because of sacroiliitis[1] and fractured vertebrae. AR 82-86, 97.

After the local disability agency denied Jakubowski's application, initially and again upon reconsideration, Jakubowski requested a hearing. On February 3, 2010, Administrative Law Judge Arthur J. Schneider heard testimony from Jakubowski, AR 26-40, and a neutral vocational expert, AR 23-47.[2] On April 9, 2010, the administrative law judge issued his decision, finding Jakubowski not disabled. AR 12-18. This became the final decision of the commissioner on March 21, 2011, when the Appeals Council affirmed. AR 3-7.

## B. Medical Evidence

In 2002, Dr. Muhammad Shamim, a rheumatologist, diagnosed Jakubowski with spinal disease (spondyloarthropathy), represented by bilateral sacroiliitis. AR.176, 221, 229, 242, 249. A physical examination in December 2003 revealed that Jakubowski had a limited range of spinal motion, but a full range of motion and full strength in all other joints. AR 221-22. Dr. Shamim prescribed physical therapy and told Jakubowski that he needed to engage in regular physical activity. AR 222. At a follow-up visit in January 2003, Jakubowski's condition was unchanged and Dr. Shamim confirmed his diagnosis. AR 219-20. At that time, Jakubowski reported that he had stopped work, because it exacerbated his back pain, but that he planned to return to work in a few days. AR 219. Dr. Shamim

---

[1] Sacroiliitis is inflammatory arthritis of the tailbone and hip joint. *Dorland's Illustrated Medical Dictionary* at 1593 (32d ed. 2012). Sacroiliitis is one aspect of spondyloarthopathy, a disease of the spinal joints. *Id.* at 1684.

[2] Jakubowski was represented by counsel at this hearing.

2

recommended that Jakubowski engage in regular physical activity and exercise, but to limit himself if work aggravated his symptoms. AR 220.

Jakubowski returned to see Dr. Shamim in July 2003, reported that he hurt all over and described how pain limited his activities. AR 292. Nevertheless, Dr. Shamim noted that Jakubowski had no swelling or true muscle weakness and was "very noncompliant" with medication. He also noted no laboratory evidence of inflammatory joint disease (arthropathy). AR 217-18, 292-93. Although Jakubowski complained of pain in multiple joints through October 2003, Dr. Shamim could find no clinical evidence of peripheral joint disease (arthropathy); his symptoms were mild and he had no inflammation in his lower back. AR 215-16, 290-91.

On May 2, 2007, Jakubowski fell from a ladder and was diagnosed with a compression fracture of a vertebra in his thoracic (mid-back) spine. AR 148-50, 154, 158, 272-73, 282-83). Dr. Francisco Sanchez treated Jakubowski, giving him a back brace and prescribing Vicodin. At the time, Sanchez observed Jakubowski walking without difficulty. AR 148-49.

On May 11, 2007, Jakubowski saw Dr. Christopher Sturm, his neurosurgeon, and reported that he had no pain. AR. 297. On examination, Jakubowski had full strength in his lower extremities, normal muscle tone, and walked with a stable upright gait; plus, the fracture was healing well and left no neurological deficits. AR 283, 297. Even so, Dr. Sturm urged Jakubowski to wear his back brace at all times and to limit his physical activity, including the lifting of any heavy weights. AR. 297.

Jakubowski saw Dr. R. Rau at Health Net of Janesville, Wisconsin, in the spring of 2007. AR 306-07. On June 13, 2007, Dr. Rau stated that Jakubowski was "unable to work" and "totally disabled at present" because of his sacroiliitis and fractured vertebra. AR 143-44, 301-05. According to Dr. Rau, Jakubowski could lift and carry a maximum of ten pounds for less than three hours a day and walk only from his bed to the bathroom. AR 304.

On July 17, 2007, Jakubowski returned to see Dr. Sturm. Jakubowski reported that he was still wearing his back brace and had a lot of pain and spasms in his midback, but in none in his extremities. On examination, Jakubowski had no neurological deficits, full strength in his lower extremities and could walk normally. Dr. Sturm gave Jakubowski a refill for narcotic analgesics (Vicodin), but told him the neurosurgery clinic would treat any further pain with non-narcotic medication. AR 295.

On August 3, 2007, Jakubowski was taken to the hospital by ambulance after falling down a flight of stairs, which exacerbated his low back pain. AR 519. On examination Jakubowski had no pain in his legs, pelvis, arms or chest and full strength in his hands, biceps, hips, knees and ankles. AR 519-20. Jakubowski refused care and left before a full evaluation could be performed. AR 520.

On August 14, 2007, Dr. Strum reported that Jakubowski presented with fairly severe mid-back pain and spasms and complained of "right hip arthritis." AR 357. Thoracolumbar x-rays showed no change with respect to his compression fracture, no subluxation and no abnormal movement. Jakubowski's physical exam also showed normal motor strength in his lower extremities, normal tone and gait and a negative straight leg raise bilaterally. AR 357.

Dr. Strum told Jakubowski that he could remove the brace, but should avoid repetitive or forcible flexion/extension of his lumbar spine, heavy lifting and straining. AR 358.

On October 23, 2007, Jakubowski returned to see Dr. Strum, who noted that Jakubowski was still wearing his brace and complained of occasional shooting pain in his left leg. Thoracolumbar x-rays again showed stable appearance of the compression fractures, stable lumbar alignment and very mild kyphosis in the lower thoracic spine. Jakubowski's physical examination was also normal. Strum recommended that Jakubowski stop wearing his brace and undergo physical therapy. AR 355.

In January 2008, Jakubowski began seeing nurse practitioner Karassa Yeomans for his chronic back pain. AR 385. Laboratory tests revealed the presence of an elevated rheumatoid factor. Yeomans referred him to Dr. Andrew Jasek, a rheumatologist, for further evaluation. AR 377.

Dr. Jasek examined Jakubowski in March 2008 and confirmed the diagnosis of spondyloarthropathy resulting in bilateral sacroiliitis with no evidence of peripheral arthritis AR 347-48. On examination, Jakubowski had a diminished range of spinal motion but good range of motion and no tenderness in his large joints. AR 348. Jasek concluded that Jakubowski did not have rheumatoid arthritis because his joints were not swollen. He noted that a positive rheumatoid factor could be present in cases of spinal disease like Jakubowski's. Jasek added that Jakubowski's main problems were alcoholism and possible drug addiction. AR 349. Ultimately, he recommended treatment with nonsteroidal, anti-inflammatory medication for his back.

### C. Consulting Physicians

On August 28, 2007, state agency physician Robert Callear completed a physical residual functional capacity assessment for Jakubowski, listing diagnoses of bilateral sacroiliitis and status post-compression fracture of vertebrae. AR 310. Callear found that Jakubowski could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. AR 311. He opined that Jakubowski could climb, balance, kneel and crawl frequently and occasionally stoop and crawl. AR 312. Callear acknowledged that his conclusions differed from the June 2007 opinion of Dr. Rau, but noted that because Dr. Rau issued his opinion within a few weeks of Jakubowski's compression fracture, he could not have intended the restrictions to continue for 12 months. AR 316.

On December 20, 2007, state agency physician Pat Chan completed a physical residual functional capacity assessment for Jakubowski, listing diagnoses of bilateral sacroiliitis and status post-compression fracture of vertebrae. AR 330. Chan found that Jakubowski could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. AR 331. He opined that Jakubowski could climb, balance, kneel and crawl frequently and occasionally stoop and crawl. AR 332.

### D. Hearing Testimony

At the hearing, Jakubowski testified that in 2002 and 2003, he had worked as a general laborer. AR 27. He also had done painting, grounds keeping, floor maintenance and other laborer work. AR 29.

Jakubowski testified that he stopped working in 2003 because he had spondyloarthropathy in his hip. AR 29-30. He testified that Dr. Shamim, a rheumatologist, diagnosed him with rheumatoid arthritis, told him that there was no cure and advised that it would travel from joint to joint. AR 30. Since Jakubowski fractured a vertebra in his back during a fall off a ladder in 2007, he reported constant pain nearly all the time. AR 30-31.

Jakubowski testified that for the past 12 weeks, he has been studying medical records and business administration through an online college. He reported sitting while he is studying and taking breaks to stretch, not being able to stand six hours in a day and being able to sit only one or two hours at a time. AR 31-33. He also testified that he can dress himself, but needs to sit down to put on his pants. Finally, Jakubowski testified that depending on his pain, he can do light household chores, such as sweeping, mopping, vacuuming, doing the dishes and cooking. AR 31, 39.

Next, the administrative law judge called a neutral vocational expert, Leslie Goldsmith, who testified that Jakubowski's past work as a laborer ranged from medium to heavy. AR 42-43. In response to a hypothetical question from the administrative law judge, the vocational expert testified that a person of Jakubowski's age, education, background and work history, who could perform light work with limited postural activities, could not perform Jakubowski's past work. AR 43-44. However, such a person could perform other jobs, such as routine assembly (15,000 light jobs in Wisconsin), packaging (20,000 light jobs in Wisconsin) and mail clerk (3,000 light jobs in Wisconsin). AR 44. Goldsmith explained that if the person had to shift position every twenty minutes, there would be no jobs that he could perform, but there would still be 7,500 sedentary assembly jobs and 10,100 sedentary

7

packaging jobs that a person could perform even if the person could not engage in frequent postural activities. AR 45-46. The expert testified that his testimony was not in conflict with the information in *The Dictionary of Occupational Titles*. AR 42.

At the end of the hearing, Jakubowski's lawyer asked that Jakubowski's alleged onset date be amended to May 2, 2007, the date of his fall. AR 47.

### E. Administrative Law Judge's Decision

In reaching the conclusion that Jakubowski was not disabled, the administrative law judge performed the required five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920. Under this test, the administrative law judge sequentially considers (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). If a claimant satisfies steps one through three, he is found to be disabled. If the claimant meets steps one and two, but not three, then he must satisfy step four. *Id*. The claimant bears the burden of proof in steps one through four. If the claimant satisfies step four, the burden shifts to the commissioner to prove that the claimant is capable of performing work in the national economy. *Id.*

At step one, the administrative law judge found that Jakubowski had not engaged in substantial gainful activity since May 2, 2007, his alleged onset date. At step two, he found that Jakubowski had the severe impairments of bilateral sacroiliitis and a history of thoracic

compression fracture. AR 14. At step three, the administrative law judge found that Jakubowski did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. Specifically, he concluded that Jakubowski's spinal impairment did not meet or equal listing 1.04 because there was no evidence of nerve root compression, spinal arachnoiditis or pseudo claudification. AR 15.

After considering the medical evidence and reported activities, the administrative law judge ultimately found at step four that Jakubowski retained the residual functional capacity to perform light work involving lifting 20 pounds occasionally and 10 pounds frequently, sitting for six hours in an eight hour work day and standing and walking for six hours in an eight hour work day, provided it required (1) no more than frequent climbing, kneeling, balancing and crawling and (2) no more than occasional stooping and crouching. AR 15. In determining Jakubowski's residual functional capacity, the administrative law judge specifically assessed Jakubowski's credibility according to the requirements of 20 C.F.R. §§ 404.1529 and 416.929, as well as Social Security Rulings 96-4p and 96-7p. The administrative law judge concluded that his testimony of ongoing pain was not credible, at least to the extent inconsistent with the judge's residual functional capacity assessment. AR 16. In support, the administrative law judge pointed to Jakubowski's admitted ability to walk for 10 blocks and help with cleaning, laundry and lawn mowing (on a riding mower) suggesting to the judge that Jakubowki could perform full-time work on a regular basis. AR 16. The administrative law judge also pointed to medical records indicating that Jakubowski retained full motor strength in his extremities, demonstrated a negative straight-leg raise test

9

and walked with a normal gait. Finally, the administrative law judge pointed out that although Jakubowski was referred to physical therapy, he failed to appear for a number of appointments and showed improvement when he switched pain medications. AR 15.

The administrative law judge next considered the opinions of the two state agency physicians that Jakubowski could perform light work with no more than frequent climbing, kneeling, balancing and crawling and no more than occasional stooping and crouching. The administrative law judge gave these opinions significant weight because they were consistent. Because it was provided only a month after Jakubowski's compression fracture, the judge gave only limited weight to the opinion Dr. Rau that Jakubowski could lift only 10 pounds rarely and could not walk without support. The judge noted in addition that (1) medical records dated a few months later indicated that Jakubowski had tje ability to walk with a normal gait and (2) Jakubowski himself reported in his application an ability to walk 10 blocks. AR 16.

Despite his findings, the administrative law judge relied on the testimony of the vocational expert at step four, finding that Jakubowski was not able to perform his past relevant worker as a general laborer. AR 17. At step five, however, the administrative law judge used the Medical-Vocational Guidelines as a framework and relied on the testimony of the vocational expert to find that Jakubowski was not disabled because there were jobs in significant numbers in the national economy that he could perform, including routine assembler, packager and mail clerk.[3] The administrative law judge also opined that the

---

[3] At step five, an administrative law judge can satisfy the commissioner's burden by relying on one of the Medical-Vocational Guidelines found in 20 C.F.R., Subpart P, App. 2. *Caldarulo v. Bowen*, 857 F.2d 410, 413 (7th Cir. 1988). These rules take administrative notice of the numbers

testimony of the vocational expert was consistent with the information contained in the *Dictionary of Occupational Titles*. AR 18.

OPINION

A. Standard of Review

A commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

---

of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy and very heavy), taking into account the other vocational factors of age, education and work experience. 20 C.F.R., Subpart P, App. 2, § 200.00(b). Because the rules account only for limitations that affect the person's ability to meet the exertional requirements of jobs, they are dispositive only when the person's limitations are exertional in nature (e.g., limitations on sitting, standing and amount of weight lifted). 20 C.F.R., Subpart P, App. 2, § 200.00(e). When a person has additional, non-exertional limitations (such as limitations on the ability to balance, manipulate objects, hear, see, perform mental tasks or tolerate environmental conditions), the guidelines can be used only as a "framework for consideration" and the administrative law judge must cite other evidence for his conclusion that there are significant numbers of jobs that the claimant can perform. *Id.* Because the judge here found that Jakubowski could not perform the full range of light work, he relied on the testimony of a vocational expert.

Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision. *Id.* When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

B. Jakubowski's Argument

Jakubowski only submitted a brief statement in which he lists his diagnoses of a compression fracture, degenerative spondylosis and rheumatoid arthritis; he contends that he should have been found disabled because he cannot perform physical labor or "other activities." Dkt. 9. The administrative law judge found Jakubowski to be severely impaired by sacroiliitis and a history of thoracic compression fracture. As the commissioner points out in his brief, Jakubowski at least implies that the administrative law judge should have further assessed the impact of his rheumatoid arthritis and found him unable to perform any work. The record, however, does not support Jakubowski's contentions.

At the administrative hearing, Jakubowski testified that Dr. Shamim, a rheumatologist, diagnosed him with rheumatoid arthritis, telling him that there was no cure and that it would travel from joint to joint. To the contrary, a review of the record shows that Dr. Shamim limited his diagnosis to spondyloarthropathy represented by sacroiliitis, which is defined generally as inflammatory arthritis of the tailbone and hip joint. *Dorland's, supra* n.1, at 1593. Dr. Shamim's notes contain no mention of rheumatoid arthritis, nor

indicate that Jakubowski's arthritis that would spread from joint to joint. Moreover, Dr. Jesek confirmed the sacroiliitis diagnosis in 2008, expressly stating that there was no evidence that Jakubowski had rheumatoid arthritis. Although January 2008 laboratory tests had revealed that Jakubowski had an elevated rheumatoid factor, Dr. Jesek explained that this factor could be present in cases of spinal disease like Jakubowski's. Given the lack of evidence of rheumatoid arthritis in medical record, this court is unable to find the administrative law judge erred in failing to consider arthritis as an additional, severe impairment at step two of the sequential evaluation process.

The administrative law judge agreed that Jakubowski was unable to return to work as a physical laborer, but he concluded that Jakubowski's limitations did not bar him from all work. It is this latter conclusion Jakubowski seeks to challenge. In reaching this opinion, however, the administrative law judge was entitled to give significant weight to the opinions of the state agency physicians. The only contrary opinion of record concerning Jakubowski's ability to work was Dr. Rau's June 2007 statements that Jakubowski was unable to work and totally disabled "at present," because he could lift and carry a maximum of ten pounds for less than three hours a day and walk only from his bed to the bathroom.[4]

The weight that an administrative law judge must give to the opinion of a treating physician depends on the circumstances. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the

---

[4] Although Dr. Strum advised Jakubowski in August 2007 to avoid heavy lifting and straining, those limitations do not contradict the administrative law judge's assessment.

opinion. *Id.;* 20 C.F.R. § 404.1527(d)(2). When the record contains well supported contradictory evidence, however, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. *Id.* These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors. 20 C.F.R. § 404.1527(d)(2). An administrative law judge must provide "good reasons" for the weight she gives a treating source opinion, *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011), and must base his decision on substantial evidence and not mere speculation, *White v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999).

In this case, the administrative law judge provided solid reasons for not accepting the preliminary restrictions assessed by Dr. Rau. First, the judge rightly noted that Dr. Rau made his statements only a few weeks after Jakubowski sustained his injury, without any indication that Jakubowski's limitations would continue for 12 months (one of the requirements for disability). 20 C.F.R. § 416.902(a). Second, the administrative law judge noted that medical records dated a few months later indicating that Jakubowski (a) had an ability to walk with a normal gait and (b) admitted being able to assist with household chores and walk up to 10 blocks. Since substantial evidence in the record supports all these findings, there is no basis to question the conclusions reached by the administrative law judge.

The administrative law judge then called a neutral vocational expert who testified that an individual with Jakubowski's established limitations could perform routine assembly,

14

packaging and mail clerk jobs. Because the hypothetical question that the administrative law judge posed included limitations supported by the medical evidence, there is also no basis to question the administrative law judge's reliance on the expert's testimony. *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) (vocational expert testimony may constitute substantial evidence that plaintiff can perform significant number of jobs in national economy).

Since the administrative law judge set forth both his path of reasoning and provided a logical bridge from the evidence to his conclusions, the court will affirm the commissioner's decision that Jakubowski is not disabled. *See Denton v. Astrue*, 596 F. 3d419, 425 (7th Cir. 2010).

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Gerry Lee Jakubowski's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of July, 2012.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge